UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald KEISER, Jr., Defendant–
Appellant.

No. 93–30293.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1995.

Decided June 16, 1995.

Vernon E. Woodward, Hendrickson, Everson, Noennig & Woodward, Billings, MT, for defendant-appellant.

Klaus P. Richter, Asst. U.S. Atty., Billings, MT, for plaintiff-appellee.

Before: WRIGHT, HALL, and WIGGINS, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Ronald Keiser shot Victor Romero, paralyzing him from the waist down. The shooting occurred inside the boundaries of Fort Peck Indian Reservation in Montana. Keiser was indicted and convicted of violating 18 U.S.C. § 113(f) (assault resulting in serious bodily injury). He is currently serving a prison term of 71 months. He raises on appeal two claims regarding his conviction:

(1) that the district court's instruction on self-defense and defense of another was not appropriate under the facts of this case; and (2) that the district court improperly excluded testimony regarding an incident outside the courtroom at trial that would have revealed the victim's violent character. He does not challenge his sentence.

The district court had jurisdiction under 18 U.S.C. § 1153(a) (offenses committed within Indian country). The appellant timely filed his notice of appeal, vesting this Court with jurisdiction under 28 U.S.C. § 1291. We affirm.

## I.

The regrettable events giving rise to this prosecution occurred early in the morning of December 19, 1992, in Wolf Point, Montana. A group of people gathered at a home across the street from the home of the defendant, Ronald Keiser. The gathering was raucous. Members of the group had been drinking at various bars and the drinking apparently was continuing at the after-hours party.

Keiser went across the street to complain about the party. Testimony regarding the details of what happened next is conflicting, but it appears that several arguments ensued. Keiser may have slapped a woman; a scuffle began; a guest tried to throw Keiser out of the house; Keiser pulled a chunk of hair out of the head of one of the guests.

Keiser then returned home and was quite upset. His girlfriend was unable to calm him down, so she called the defendant's brother, Randy Keiser, to come over. Randy came and was successful in calming the defendant down. Randy then left the defendant's house and returned to his pickup truck, which was parked on the street between the two houses.

At around the same time as Randy was leaving, however, Victor Romero, the brother of the girl whom the defendant allegedly slapped, arrived at the house across the street. Angered that someone had slapped his sister, Romero set off across the street with two companions. En route, they encountered Randy, the brother of the defendant, sitting in his pickup truck as it warmed up. Romero saw Randy in the truck and, thinking it was Randy who had slapped his sister, began hitting and shoving Randy, who was still sitting in the driver's seat of his truck.

The defendant watched these events from inside his house. He testified that he saw one of the two men who were with Romero remove a gun from the back of a parked Ford Escort station wagon, place it in the back of his pants, and head in Randy's direction.[1] He therefore feared the three men were about to kill his brother. Ronald retrieved a rifle from his bedroom. When he saw what he thought was a gun being used in the assault on his brother, he shot at the people by the truck, hitting Romero.

The bullet passed through Romero's kidney, colon, and small intestine, and lodged in his spine. Romero is now paralyzed from the waist down, and uses a wheelchair and a colostomy bag.

Keiser was arrested four days later and indicted on the charge of violating 18 U.S.C. § 113(f). His theory at trial was that he had acted in defense of his brother, who he reasonably believed was in danger because of the assault by three armed and angry men.

During the second day of trial, the defense called the defendant's brother, Randy Keiser. Defense counsel began to ask Randy about an incident that had occurred the day prior in the lobby outside the courtroom. The prosecutor objected to the line of questioning as irrelevant and the court sustained the objection.

Counsel then approached the bench and defense counsel made an offer of proof:

My purpose in this was not—yesterday afternoon Victor Romero [the victim] was with his family and friends in the presence of court security. He looked at this witness and he said words to the effect, there he is, that's the fucker's brother. And I

---

**1.** This man turned out to be George Whetsit, who testified that he had actually removed a "half rack" of beer from the parked car.

want you to remember his face, remember his face.

And he had to be taken out of there, he was screaming. I think that's indicative of he wanted to get revenge, it is indicative of his actions on the night in question. This is not the sympathetic individual that comes in here and says he was very calm and collected. And I think it is indicative of his state of mind now and his state of mind at the time. I think it is relevant.

Tr. of May 11, 1993, at 271–72. The court again sustained the objection. Keiser was convicted on May 11, 1993 and is incarcerated for a term of 71 months.

## II.

Keiser argues that the district court committed reversible error in giving a jury instruction regarding self-defense different than the one Keiser proposed. We reject this argument and hold that the district court's reading of Ninth Circuit Model Criminal Instruction 6.05 adequately informed the jury of Keiser's theory of the case. *Cf. United States v. Goland,* 959 F.2d 1449, 1454 (9th Cir.1992) (approving instructions that "adequately expressed [the] theory of the defense").

■ "[T]here is some dispute over the appropriate standard of review when a trial court rejects certain types of proposed jury instructions." *United States v. Dinkane,* 17 F.3d 1192, 1200 (9th Cir.1994). "Whether a jury instruction correctly sets forth the elements of a statutory crime is a question of law reviewed de novo. The district court's formulation of these elements for the jury is reviewed for abuse of discretion." *United States v. Reese,* 2 F.3d 870, 883 (9th Cir.1993) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994). In this case, the appellant does not claim that the jury instructions were wrong as a matter of law, or that they failed to set forth the elements of the defense. Rather, he claims that the model instruction on self-defense

and defense of another was "not appropriate under the facts." Because this argument appears to be a challenge to the district court's "formulation" of the elements of the defense, we conclude that abuse of discretion is the appropriate standard of review.

The defense introduced evidence that one of the men who was involved in the assault against the defendant's brother had, prior to approaching the brother, reached into the back of a car, removed a metal object, and placed it in the small of his back. The defendant testified that he thought he saw one of the men pulling a handgun out of the car and walking toward his brother with it.[2] Not surprisingly, the prosecution denied that anyone had removed a gun from the back of the car. Instead, it presented evidence indicating that the man had grabbed a few beers from the back of the car.[3]

After the shooting, the investigating officers performed a cursory search for a gun. They found none. Keiser argues on appeal that the failure to find any gun "obviously gives rise to evidence from which the finder of fact could have believed that the Defendant was mistaken in his belief that his brother's assailants were armed." He therefore requested at trial a jury instruction emphasizing that even a mistaken belief in the necessity of force can support a claim of self-defense or defense of another.

The defense offered the following instruction:

You are to consider the following requirements of the law in determining whether the use of force claimed by defendant was justified:

1. The defendant must not be the aggressor;

2. The danger of harm must be a present one;

3. The force threatened must be unlawful;

4. The defendant must actually believe the danger exists, that is, use of force

---

**2.** Tr. of May 11, 1993, at 289 (testimony of Ronald Keiser) ("No, I'm almost quite certain it was a gun. The way he handled it, the way he put it in the back of his pants. He didn't put it in an inside pocket, he put it in the back of his back.").

**3.** *See, e.g.,* Tr. of May 10, 1993, at 111 (testimony of George Whetsit, Jr.) ("I went to the back end of the car and grabbed a half rack of beer.").

by him is necessary to avert the danger and that the kind and amount of force which defendant uses is necessary;

5. The defendant's belief, in each of the aspects described, is reasonable even if mistaken.

You are further advised that even if you determine the use of force by defendant was not justified, the government still has the duty to prove each of the elements of the crime charged beyond a reasonable doubt.

Docket Entry No. 28.

■ The district court, without significant explanation, refused to give this instruction. Tr. of May 11, 1993, at 320 ("I think I want to give the Ninth Circuit one.... I'm giving the Ninth Circuit one."). Rather, it gave the model instruction on self-defense:

The defendant has offered evidence of having acted in self-defense. Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary in the circumstances.

Force likely to cause death or great bodily harm is justified in self-defense only if a person reasonably believes that such force is necessary to prevent death or great bodily harm.

Tr. of May 11, 1993, at 335. The court also instructed the jury that the prosecution bore the burden of proving beyond a reasonable doubt that the defendant had not acted in reasonable self-defense. *Id.* at 331 ("the government must prove each of the following elements beyond a reasonable doubt: ... the defendant did not reasonably believe that force was necessary to defend against an immediate use of unlawful force, or the defendant used more force than was reasonably necessary in the circumstances").[4]

■ We have found no opinion expressly approving or disapproving this model instruc-

tion. As a general matter, however, a district court need not accept the precise words proposed by an accused, *United States v. Lopez–Alvarez*, 970 F.2d 583, 597 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992), so long as the instructions the court does give "adequately cover the defense theory." *United States v. Taren–Palma*, 997 F.2d 525, 535 (9th Cir.1993) (per curiam), *cert. denied,* —— U.S. ——, 114 S.Ct. 1648, 128 L.Ed.2d 368 (1994); *see also United States v. Marsh*, 26 F.3d 1496, 1502 (9th Cir.1994) ("Although a district court has substantial latitude to tailor jury instructions, the instructions must fairly and adequately embody the relevant law regarding the issues presented."). The model instruction accurately states the elements of self-defense and defense of another in this Circuit. *Cf. United States v. Span*, 970 F.2d 573, 576 n. 2 (9th Cir.1992) (noting without expressly approving model instruction 6.05); *United States v. Doubleday*, 804 F.2d 1091, 1095 (9th Cir. 1986) (per curiam) (quoting without expressly approving an earlier version of model instruction 6.05).

■ Furthermore, a district court may "refuse an instruction if its language gives undue emphasis to defendant's version of the facts ... or if it would tend to influence the jury toward accepting the defendant's version of the facts." *United States v. Goland*, 959 F.2d 1449, 1453 (9th Cir.1992) (quoting *United States v. Davis*, 597 F.2d 1237, 1240 (9th Cir.1979)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1384, 122 L.Ed.2d 759 (1993). Here, the district court could reasonably have concluded that the proposed instruction might "influence the jury toward accepting the defendant's version of the facts." Point five, for example, could be read to draw undue attention to the notion that the defendant's belief may be reasonable even though mistaken.

■ The model instruction adequately allowed the jury to find that the government had not met its burden of showing that the defendant did not reasonably act in defense of his brother. The instruction does not

---

4. The court was proper to shift the burden on self-defense. Once a defendant has introduced evidence of self-defense, the burden shifts to the government to disprove it beyond a reasonable doubt. *See United States v. Jackson,* 726 F.2d 1466, 1469 (9th Cir.1984).

require the defendant to show that his force *was* justified, only that he reasonably believed it was necessary. Likewise, the model instruction does not require the defendant to show he used more force than was *actually* necessary, only that he used no more than "appears reasonably necessary." The jury surely was free to find that the government had not met its burden, regardless whether the defendant was mistaken in his belief regarding the gun. The jury, however, found that the government did meet its burden. We see no reason to disturb this finding simply because the district court gave the model instruction rather than the defendant's proposed instruction.[5]

## III.

■ Keiser's only defense in this case was that he was justified in shooting into the muster because he was acting in defense of his brother, whom Romero was assaulting at the time of the shooting. Keiser sought to introduce testimony about this incident outside the courtroom in order to bolster his self-defense claim. He argues on appeal that the incident "tend[s] to show the character of Mr. Romero for anger and violence." Admission of Randy Keiser's testimony regarding the incident would have "show[n] the jury the true nature of the 'victim.'" The govern-

ment responds that the testimony "would have added absolutely nothing material to the trial," because "the appellant did not personally know the victim, nor did he therefore have personal knowledge of the victim['[s character." We think that neither party has properly addressed the legal questions this proffered testimony raises.[6]

The question whether defendants may introduce specific violent or aggressive acts of the victim in order to bolster a claim of self-defense has begotten a host of written opinions, both in the federal courts and in state courts interpreting analogs to the Federal Rules of Evidence. The analytic approaches, as well as the answers these approaches have yielded, are myriad. Some courts have reasoned that a victim's violent nature is an essential element of a claim of self-defense and that defendants should therefore be allowed to introduce evidence of specific acts in order to prove that character.[7] Some have concluded that the victim's violent nature is not essential to the claim of self-defense, and therefore limit the defendant to the use of reputation or opinion evidence to show the victim's character for violence.[8] Others, on the other hand, have refused to admit specific acts on the rationale that their use would be circumstantial rather than direct.[9] Oth-

5. We acknowledge that some commentators have recommended an instruction specifically stating that a belief may be reasonable even if mistaken in cases in which the defendant used self-defense as a result of a misapprehension. *See* Leonard B. Sand et al., 1 Modern Federal Jury Instructions, ¶ 8.08, at 8–60 (1994). We decline, however, to mandate such an instruction.

6. This Court generally reviews evidentiary rulings for an abuse of discretion. *United States v. Blaylock,* 20 F.3d 1458, 1462 (9th Cir.1994). The issues we must decide in this case, however, are largely issues of law: whether character evidence unknown to the defendant at the time of the assault can, as a matter of law, be relevant to the claim of self-defense, and whether, as a matter of law, such evidence is admissible in a form other than reputation or opinion. Such questions are subject to de novo review. *See United States v. Cuozzo,* 962 F.2d 945, 947 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992).

7. *E.g., Gottschalk v. State,* 881 P.2d 1139, 1143 (Alaska Ct.App.1994); *Thompson v. State,* 306 Ark. 193, 813 S.W.2d 249, 251 (1991); *State v. Dunson,* 433 N.W.2d 676, 681 (Iowa 1988); *Gon-*

*zales v. State,* 838 S.W.2d 848, 859 (Tex.Ct.App. 1992); *State v. Koon,* 190 W.Va. 632, 440 S.E.2d 442, 450 (1993).

8. *E.g., State v. Smith,* 222 Conn. 1, 608 A.2d 63, 72 (1992) (applying state common law); *State v. Alexander,* 52 Wash.App. 897, 765 P.2d 321, 324 (1988); *cf. United States v. Piche,* 981 F.2d 706, 713 (4th Cir.1992) (excluding evidence of specific acts of racial violence because the victim's tendency to engage in racial violence is not an essential element of any defense).

9. *E.g., United States v. Talamante,* 981 F.2d 1153, 1156 (10th Cir.1992) ("use of evidence of a victim's violent character to prove that the victim was the aggressor is circumstantial use of character evidence"); *Bingham v. Baker,* 28 Fed. R.Evid.Serv. (Callaghan) 267, 272, 1989 WL 87863 (8th Cir.1989) (per curiam) ("[The victim's] violent temper was only relevant as circumstantial evidence of his conduct, that is, as evidence that [the victim] acted in conformity therewith."); *Perrin v. Anderson,* 784 F.2d 1040, 1045 (10th Cir.1986).

ers still admit specific acts under the theory that the acts themselves bear on the defendant's state of mind and the reasonableness of his use of force in self-defense.[10] At least one court admits specific acts under the theory that the victim's character is an essential element of self-defense, but limits the acts to those of which the defendant had personal knowledge at the time of the crime,[11] and another admits specific acts as character evidence because the acts are essential to determining the defendant's state of mind.[12] This Court has not yet addressed this question.

Our task, therefore, is not simple. It is made significantly easier, however, by clarification of what this case is *not* about. Keiser makes no claim on appeal that the incident outside the courtroom—which obviously occurred after the shooting—was relevant to his state of mind at the time of the shooting or the reasonableness of his belief that force in self-defense was necessary. Thus, we need not, and do not, reach the question whether specific acts are admissible to bolster the assertion that the defendant's belief in the need for force was reasonable. Instead, we need only decide whether testimony regarding this incident should have been admitted *as character evidence, i.e.,* as evidence from which the jury could infer that the victim, at the time of the shooting, was likely to be behaving in accordance with his violent character.

 Put another way, introduction of specific acts as victim character evidence would support the proposition that the victim was in fact using unlawful force, where as introduction of specific acts to prove the defendant's state of mind would support the proposition that the defendant's belief that force was necessary was reasonable. These two propositions are separate elements of the defense of self-defense or defense of another.[13] *Cf. Bland,* 337 N.W.2d at 382 ("The general rule of exclusion ... applies only when character evidence is used to show that a person acted in conformity with his character. Thus, when character evidence is used for some purpose other than to show that a person acted in conformity with his character, it does not apply."); *Duncan,* 111 N.M. at 356, 805 P.2d at 623 ("The evidence ... was not offered to prove that he acted in conformity therewith on the occasion in question; it was offered to prove that his character induced, or at least contributed to, a certain state of mind—fear—on the part of the defendant. As so offered, the evidence was neither admissible nor excludable under [the rule of exclusion]. The rule simply did not apply to this particular piece of evidence.").

### A. Relevance of the excluded testimony

The Federal Rules of Evidence provide an exception to the general rule against character evidence as propensity evidence in the case of "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused." Fed.R.Evid. 404(a)(2). The advisory committee's note to this rule indicates that a victim's "violent disposition" is exactly the sort of evidence this rule was intended to encompass. *See* Fed.R.Evid. 404 advisory committee's note ("Illustrations are: evidence of a violent disposition to prove that the person was the aggressor in an affray....").

 Thus, whether Romero is a violent and angry person is certainly relevant to the defendant's claim that he was acting in defense of his brother. Romero's violent character makes it more likely that his behavior on the night of the shooting was violent—which supports the defendant's defense that he was shooting to protect his brother—than it would be if Romero were peaceable.

The government, however, argues that because the incident occurred *after* the shoot-

---

10. *E.g., State v. Cano,* 154 Ariz. 447, 449, 743 P.2d 956, 958 (Ct.App.1987); *State v. Bland,* 337 N.W.2d 378, 383 (Minn.1983); *State v. Duncan,* 111 N.M. 354, 356, 805 P.2d 621, 623 (1991); *State v. Latham,* 519 N.W.2d 68, 71 (S.D.1994).

11. *People v. Boles,* 127 Mich.App. 759, 339 N.W.2d 249, 252 (Ct.App.1983).

12. *Green v. State,* 614 So.2d 926, 934 (Miss. 1992).

13. Presumably, however, proof that the victim was in fact using unlawful force would be highly probative that the defendant's belief in the necessity for force was reasonable.

ing, it has no bearing on whether the defendant acted reasonably at the time of the shooting. It reasons that, at the time of the shooting, the defendant did not "have personal knowledge of the victim[']s character."

This argument misapprehends the purpose of presenting testimony regarding the victim's character. Rule 404(a)(2) provides one of the few instances in which character evidence *is* admissible to allow the jury to infer that a person acted on a specific occasion in conformity with his character. The rule does not contemplate that the character evidence will somehow reveal the defendant's state of mind at the time he acted in self-defense.

The structure of the rule supports this conclusion. Section 404(a) establishes the general prohibition: "Evidence of a person's character or a trait of his character is not admissible *for the purpose of proving that he acted in conformity therewith on a particular occasion....*" Fed.R.Evid. 404(a) (emphasis added). The rule then provides three exceptions to the prohibition, one of which is the exception for character of the victim provided in section 404(a)(2). The fact that section 404(a)(2) is an exception to the rule against introducing character evidence to imply that a person acted in conformity with that character on a particular occasion suggests that the very purpose of victim character evidence is to suggest to the jury that the victim did indeed act in conformity with his violent character at the time of the alleged crime against him. The purpose is not to provide insight into the reasonableness of the thought processes of the defendant. Thus, whether the defendant knew of the victim's character at the time of the crime has no bearing on whether victim character evidence should come in under section 404(a)(2). *Cf.* John W. Strong, McCormick on Evidence § 193 (4th ed. 1992) [hereinafter

McCormick] ("A well established *exception to the rule forbidding character evidence to prove conduct* ... permits the accused ... to introduce appropriate evidence of the victim's character for turbulence and violence.") (emphasis added) (footnotes omitted).

Furthermore, a smattering of federal cases indirectly supports the contention that the relevance of victim character in an assault case stems from its making it more likely that the victim was in fact using unlawful force—a proposition that, if true, would give rise to the defendant's justified use of force—rather than its bearing on the defendant's state of mind. These cases show that whether the defendant knew of the victim's character does not affect the relevance of the evidence. For instance, the Court of Appeals for the Tenth Circuit, in *Perrin v. Anderson,* 784 F.2d 1040 (10th Cir.1986), reasoned that testimony of *nondefendants* regarding the violent nature of the victim was relevant to the claim of self-defense. *Id.* at 1045.[14] Such testimony would only be relevant to allow the jury to infer that the victim was also acting violently on the occasion in question; it would be entirely irrelevant to whether the defendants actually knew of the victim's violent nature. *See United States v. Piche,* 981 F.2d 706, 713 (4th Cir.1992) (assuming without deciding that evidence of the victim's prior engagement in violence—which was unknown to the defendant at the time of the assault—was relevant), *cert. denied,* —— U.S. ——, 113 S.Ct. 2356, 124 L.Ed.2d 264 (1993); *United States v. Comerford,* 857 F.2d 1323, 1324 (9th Cir.1988) (affirming the exclusion of testimony regarding an incident of victim violence that occurred after the crime because it would have been overly prejudicial, without discussing its relevance), *cert. denied,* 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 802 (1989).[15]

14. The court did hold, however, that the form of some of the evidence had been improper. Furthermore, *Perrin* was a § 1983 case against officers who had killed an arrestee, rather than a criminal case. This distinction is of little moment, however. The court held that because "[a] verdict against the defendants in this case would be tantamount to finding that they killed Perrin without cause," the defendants could invoke the exceptions to the general rule against character evidence. *Perrin,* 784 F.2d at 1044.

15. *But see Boles,* 339 N.W.2d at 252 ("[U]nless the defendant could show that he knew of that incident or that it was directly connected with the homicide, the evidence should be excluded."); *Latham,* 519 N.W.2d at 71 ("[O]nly specific instances of conduct known to [the defendant] at the time of the incident in question were relevant."); *State v. Woodson,* 181 W.Va. 325, 382 S.E.2d 519, 524 n. 5 (1989) ("We expressly overrule any suggestion ... that Rule 405(b) ... permits the defendant to introduce specific acts

These cases suggest a common understanding in the federal courts that "personal knowledge" of the victim's propensity for violence is simply not a prerequisite for admission of victim character evidence under Rule 404(a)(2). We therefore hold that Romero's violent nature is relevant to Keiser's theory of defense of his brother.

### B. Form of the excluded testimony

Despite its relevance, the testimony regarding the altercation outside the courtroom was properly excluded. Under the Federal Rules of Evidence, only reputation or opinion evidence is proper to show that the victim of an assault had a propensity toward violence. The excluded testimony, on the other hand, would have constituted paradigmatic "specific act" evidence.

After a court determines that character evidence is admissible under Rule 404, it must next turn to Rule 405 to determine what *form* that evidence may take. *See United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir.1992) ("Federal Rule of Evidence 405 establishes the permissible methods of proving character under Rule 404(a)(2).") (footnote omitted), *cert. denied,* — U.S. —, 113 S.Ct. 1876, 123 L.Ed.2d 494 (1993). Rule 405 provides:

**Methods of Proving Character**

**(a) Reputation or opinion**

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion....

**(b) Specific instances of conduct**

In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense,

proof may also be made of specific instances of that person's conduct.

Fed.R.Evid. 405.

No published opinion of this Court has addressed whether Rule 405(b) authorizes a defendant claiming self-defense to introduce specific acts demonstrating his victim's propensity for violence. We conclude, however, that the language of the rule, the teaching of out-of-Circuit authority, and the theory supporting admission of victim character evidence all lead to the conclusion that victim character evidence introduced to support a claim of self-defense or defense of another should be limited to reputation or opinion evidence.

The language of the rule states in straightforward manner that evidence of specific instances of conduct may only be made when a person's character is "an essential element of a ... defense."[16] Some courts have analyzed particular efforts to introduce specific act evidence to determine whether character is, as the rule states, an "essential element." *E.g., Piche*, 981 F.2d at 713 ("Because the evidence of character that [the defendant] attempts to admit is not an essential element of a charge, claim, or defense, however, proof of character is limited to reputation or opinion evidence in accord with Rule 405(a)."). Not all courts have conducted their analyses in strict conformity with this language, however. Other courts, for instance, have analyzed the question using different terminology, concluding that whether proof of specific instances of conduct is admissible depends upon whether the use of character evidence is "circumstantial" or "direct." *E.g., Talamante*, 981 F.2d at 1156 ("When character is used circumstantially to create an inference that a person acted in conformity with his or her character, Rule 405 allows proof of character only by reputation and opinion.").[17]

of violence by the victim against third parties even though he has no knowledge of them at the time he claimed to have acted in self-defense.").

**16.** The advisory committee's note explains the rationale for this limitation: "Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time, it possesses the greatest capacity to arouse prejudice, to con-

fuse, to surprise, and to consume time." Fed. R.Evid. 405 advisory committee's note.

**17.** A case from the Court of Appeals for the Eighth Circuit could be read establish a third approach. In *United States v. Waloke*, 962 F.2d 824 (8th Cir.1992), the court read the language of section 405(b)—"proof may also be made of specific instances of ... conduct"—to imply that "[t]he district court thus has discretion to exclude evidence offered under Rule 405(b) if it

This lack of uniformity in methodology appears to stem from some courts' reliance on language in the advisory committee's note to Rule 404, which rule governs when character evidence is admissible in the first instance. The note provides an overview of the situations in which character evidence may have relevance, and observes that character may arise in two fundamentally different ways. Character may be "in issue," as when a statute specifies the victim's chastity as an element of the crime of seduction, or when the defense to a defamation action is the truth of the allegedly defamatory statement. On the other hand, character may have relevance only circumstantially, in order to suggest an inference that a person acted in conformity with his character on a specific occasion. Fed.R.Evid. 404 advisory committee's note.[18]

In contrast to these other courts, we find that reliance on the advisory committee's note to Rule 404—which merely establishes a nomenclature for discussing the ways in which "character" might have relevance—in order to determine what *form* evidence may take under Rule 405 is misguided. The note to Rule 404 begins with the assertion that "[t]his subdivision [section 404(a)] deals with the basic question whether character evidence should be admitted." The note to Rule 405, on the other hand, begins by clari-

fying that Rule 405 "deals only with allowable methods of proving character, not with the admissibility of character evidence, which is covered in Rule 404." These notes deal with separate questions, as do the evidence rules they explain.

■ Thus, the distinction that the Rule 404 note establishes between character "in issue" and character evidence as "circumstantial" does not guide our inquiry here.[19] Instead, we conduct our Rule 405 inquiry according to the terms of the Rule itself, which requires courts to determine whether the character a party seeks to prove constitutes "an essential element of a charge, claim, or defense." Fed.R.Evid. 405(b). The relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense?[20] If not, then character is not essential and evidence should be limited to opinion or reputation. *Cf. Piche*, 981 F.2d at 713 (quoting *Perrin*, 784 F.2d at 1045 (quoting E. Cleary, McCormick on Evidence § 187 (3d ed. 1984))); *see also Cano*, 154 Ariz. at 449, 743 P.2d at 958 (holding that character trait is essential element if it is an operative fact that determines the rights and liabilities of the parties); *Gonzales*, 838 S.W.2d at 859 ("The phrase has the same meaning as 'consequential fact' ") (quot-

---

determines that Rule 403 considerations warrant exclusion." *Id.* at 830. We agree that a district court always retains discretion under Rule 403 to exclude otherwise relevant evidence on the grounds of undue prejudice or delay. Its authority to do so, however, has nothing to do with the permissive language in Rule 405(b). "[P]roof may also be made" simply confers on the *party* seeking to prove character the option to introduce specific instances; it does not give the district court any discretion to exclude in addition to the discretion Rule 403 already confers.

**18.** The tendency of courts to discuss whether the evidence is circumstantial or direct, rather than whether character is an essential element of the claim or defense, may also stem from a distinction made in the McCormick treatise, which differentiates between circumstances in which character is "in issue," *see* McCormick § 187 (concluding that such evidence is generally admissible), and those in which character is used as "circumstantial evidence." *See* McCormick § 188 (concluding that such evidence is generally inadmissible).

**19.** The inquiry into whether character is an essential element and whether the use of the evidence would be circumstantial are similar. Some courts, in fact, appear to apply both tests without acknowledging their analytic differences. The Tenth Circuit case *Perrin v. Anderson*, for example, reasons that character is an essential element "when it is 'a material fact that under the substantive law determines rights and liabilities of the parties.' " 784 F.2d at 1045 (quoting E. Cleary, McCormick on Evidence § 187 (3d ed. 1984)). On the same page, however, the opinion asserts that "[w]hen character is used circumstantially, only reputation and opinion are acceptable forms of proof." *Id.*

**20.** In the case of a tort or contract question, the court would look to an authoritative statutory or common law statement of the elements of the prima facie case and defenses. Similarly, with respect to a crime, the court would look to the indictment or an authoritative statement of the claimed defense. The inquiry would be legal rather than factual, categorical rather than particular to the case at hand.

ing 2 J. Weinstein & M. Berger, Evidence § 405[04] (1992)); *Alexander*, 765 P.2d at 324.

 Our object in this case, therefore, is to determine whether Romero's violent character is an "essential element" of Keiser's defense. We conclude, by reference to the model instruction we expressly approved in Part II, that Romero's violent character does not constitute an essential element of Keiser's claim that the shooting was justified because he was acting in defense of his brother. Even had Keiser proven that Romero is a violent person, the jury would still have been free to decide that Romero was not using or about to use unlawful force, or that the force Romero was using was not likely to cause death or great bodily harm, or that Keiser did not reasonably believe force was necessary, or that he used more force than appeared reasonably necessary. On the other hand, a successful defense in no way depended on Keiser's being able to show that the Romero has a propensity toward violence. A defendant could, for example, successfully assert a claim of self-defense against an avowed pacifist, so long as the jury agrees that the defendant reasonably believed unlawful force was about to be used against him. Thus, even though relevant, Romero's character is not an essential element of Keiser's defense. *Cf. Alexander*, 765 P.2d at 324 (holding that character is not an essential element of self-defense because "[t]he self-defense issue could be resolved without any evidence of, or reliance upon, a character trait of [the victim] or the defendant").[21]

Thus, exclusion of the proffered testimony regarding the verbal altercation outside the courtroom was proper because the victim's violent nature is not essential to a successful claim of self-defense. Keiser's claim of self-defense neither rises nor falls on his success in proving that Romero has a penchant for violent outbursts. Thus, Keiser had no right to introduce evidence of the incident outside the courtroom to buttress his defense. We therefore affirm the district court's exclusion of the testimony.

### IV.

In sum, we hold that the district court properly excluded testimony regarding Romero's outburst outside the courtroom, and that the district court did not err in giving the model instruction on self-defense. Keiser's conviction is

AFFIRMED.

---

**21.** *But see Thompson,* 813 S.W.2d at 251 ("as an essential element of her defense, appellant clearly had the right to introduce specific instances of [the victim's] violent character"); *Boles,* 339 N.W.2d at 252 (same); *Gonzales,* 838 S.W.2d at 859 ("A victim's aggressive character is an essential element of the defense of self-defense."). We recognize, of course, that different jurisdictions will have different formulations of the elements

of self-defense. These differences could account in part for the diverse conclusions regarding whether aggressiveness is an "essential" element.