In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4059

United States of America,

Plaintiff-Appellee,

v.

Craig A. Smith,

Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois, Rock Island Division.
No. 98-CR-40067--Joe B. McDade, Chief Judge.

Argued September 8, 2000--Decided October 13, 2000

Before Flaum, Chief Judge, and Posner and Rovner, Circuit Judges.

Flaum, Chief Judge.  Craig Smith appeals his conviction for witness retaliation under 18 U.S.C. sec. 1513(b) following a jury trial. Smith contends on appeal that: (1) the indictment charging him is insufficient as a matter of law, (2) the district court erred by excluding from evidence the victim's misdemeanor convictions, and (3) by substituting a juror outside of Smith's presence, the court violated his right to be present at all stages of the criminal proceedings. For the reasons stated herein, we affirm.

I.  BACKGROUND

On the evening of October 30, 1998, Craig Smith accosted Timothy Heater inside the Wells Fargo Lounge. What under different circumstance would be considered a barroom assault, was in this instance a violation of the Federal Witness Retaliation Statute. To fully understand why this altercation resulted in the bringing of federal charges, a discussion of the history of the participants and their relationship is necessary.

From 1994 through 1996, Craig Smith illegally harvested fresh water mussels ("clams"). After harvesting, Smith would sell these clams to the Mississippi Valley Shell Company ("MVSC"), which

would then sell them to Japanese cultured pearl businesses. In 1995, as a result of poaching violations, Smith's Illinois clamming license was revoked. Though he continued to harvest clams and sell them on his own, Smith also enlisted the aid of Timothy Heater. At the behest of Smith, Heater purchased an Iowa license to harvest clams. On 13 occasions, Smith handed over his harvest to Heater, who, acting as the "middleman," delivered the clams to MVSC. In return, Heater received a check in his name for the value of the harvest, which he would then cash and deliver the proceeds to Smith. For his part, Heater received approximately 25 dollars per transaction.

On April 1, 1997, government agents executed a search warrant of MVSC. While reviewing seized records, the agents learned of Heater's involvement in MVSC's operations. On April 2, 1998, Heater was served with a grand jury subpoena issued by the United States District Court for the Southern District of Iowa. After reaching an agreement with federal agents, Heater presented himself at the United States Attorney's Office in Rock Island, Illinois. While at the Office, Heater presented handwriting exemplars and discussed his involvement in the illegal clamming operation. Heater informed the agents of how he "laundered" Smith's illegally harvested clams, selling them to MVSC. Partially on the basis of Heater's testimony, Smith was indicted for interstate transportation of illegally taken wildlife in violation of 16 U.S.C. sec. 3372 ("the Lacey Act"). On September 17, 1998, Smith pled guilty to one count of the indictment. The district court allowed Smith to remain free on bond, pending sentencing. The district court also admonished Smith to avoid contact with any government witness.

On October 30, 1998, Heater arrived at the Wells Fargo Lounge, located in Moline, Illinois. Upon entering the establishment, Heater noticed that Smith, accompanied by a group of friends, was seated at a table. Heater proceeded to the main bar where he ordered a drink. Smith, who likewise noticed Heater's presence at the Lounge, approached the bouncer Jesse Sappington. Smith requested that, in order to avoid any potential incident, Sappington ask Heater to leave the premises. Sappington approached Heater, and after some negotiation, Heater agreed to vacate the Lounge. While exiting, Smith approached Heater from behind, verbally threatened his life, and pushed him against a wall. As a result of the altercation, Heater's head was lacerated, and the police were summoned.

On December 18, 1998, Smith was charged with one count of witness retaliation in violation of

18 U.S.C. sec. 1513(b). The trial began on February 22, 1999. On the second day of trial, the court conducted a conference in chambers with both government and defense counsels present. The court had learned that a juror was unable to travel to the court due to inclement weather. In conference, the court stated that it wished to proceed with an alternate juror, but gave both sides the opportunity to state their positions. Smith's counsel stated that he had talked to Smith who liked the juror a lot, and wished that the trial be resumed only when that juror could be present. Nonetheless, the court decided to replace the missing juror with an alternate juror. That day the jury returned a verdict of guilty on the charge of witness retaliation./1 On November 18, 1999, Smith was sentenced to a term of imprisonment of 93 months, 85 months of which to run concurrent with the illegal harvesting sentence.

Smith now appeals his conviction on three grounds. First, Smith argues that his indictment is insufficient as a matter of law. Second, he claims that the district court erred in failing to allow him to introduce evidence of Heater's misdemeanor convictions for domestic battery and theft. Finally, Smith asserts that the district court's in-chambers decision to substitute an alternate juror for a tardy one violated his constitutional right to be present at all phases of the criminal proceedings.

II.  DISCUSSION
A.  Sufficiency of the Indictment

Defendant's first argument on appeal is that the indictment in this case is legally insufficient to charge the offense of witness retaliation. We review challenges to the sufficiency of an indictment de novo. See United States v. Torres, 191 F.3d 799, 805 (7th Cir. 1999), cert. denied, 120 S.Ct. 1218 (2000). To be sufficient, an indictment must fulfill three distinct functions. First, the indictment must state all of the elements of the crime charged; second, it must adequately apprise the defendant of the nature of the charges so that he may prepare a defense; and third, it must allow the defendant to plead the judgment as a bar to any future prosecutions for the same offense. See Fed.R.Crim.P. 7(c)(1); Torres, 191 F.3d at 805. Indictments are reviewed on a practical basis and in their entirety, rather than "in a hypertechnical manner." United States v. McNeese, 901 F.2d 585, 602 (7th Cir. 1990).

In setting forth the offense, it is generally acceptable for the indictment to "track" the words of the statute itself, so long as those

words expressly set forth all the elements necessary to constitute the offense intended to be punished. United States v. Hinkle, 637 F.2d 1154, 1157 (7th Cir. 1981). However, an indictment that tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars to "sufficiently apprise the defendant of what he must be prepared to meet." Russell v. United States, 369 U.S. 749, 763 (1962). In order for an indictment to satisfy this second hurdle, we require, at a minimum, that it provide some means of pinning down the specific conduct at issue. United States v. Josten, 704 F.Supp. 841, 844 (N.D. Ill. 1989). Yet in this inquiry, the presence or absence of any particular fact need not be dispositive of the issue.

Applying the standards set forth above, we believe the indictment in the instant case is sufficient. The indictment of the defendant charged that:

On or about October 30, 1998, at Moline, in Rock Island County, in the Central District of Illinois, the defendant, CRAIG ALLEN SMITH, did knowingly engage in conduct and thereby cause bodily injury to another person, and did threaten to do so, all with intent to retaliate against that person for documents and objects produced by that person, who was a witness in an official proceeding, that is, a session of the Federal Grand Jury for the Southern District of Iowa, and for information relating to the commission of Federal offenses given by that person to law enforcement officers, namely violations of the Lacey Act, Title 16, United States Code, Section 3372. All in violation of Title 18, United States Code, Section 1513(b).

Smith does not contend that the indictment in question fails to state the elements of witness retaliation. As defendant notes, this indictment largely mirrors the language of 18 U.S.C. sec. 1513(b), the witness retaliation statute./2 By framing the charge against Smith in the language of the statute, this indictment fulfills that first function of identifying the essential elements necessary to sustain a conviction. Smith contends however, that in doing so, this indictment is devoid of any specific allegations as to the conduct engaged in, the bodily injury suffered, the victim's name or identity, the nature of the alleged threat, and the precise location of the offense. Thus, he urges, it fails to give him notice of what specifically he must be prepared to meet at trial.

Smith is correct in his assertion that the indictment at issue does not detail every factual

nugget necessary for conviction. However, we do not believe that it is necessary for an indictment to allege in detail the factual proof that will be relied on to support the charges. We consistently have held that the minimum level of detail that is required for an indictment is that it be sufficiently detailed so that it adequately apprises the defendant of the charges, thereby enabling him to prepare his defense. See Hinkle, 637 F.2d at 1157; see also United States v. Williams, 679 F.2d 504, 508 (5th Cir. 1982).

Turning to the indictment, we believe that it contains sufficient particulars to put the defendant on notice of the nature of the witness retaliation charge. Reading the indictment, the defendant would have known that he was being charged with witness retaliation for injuring, on October 30, in Moline, Illinois, an individual who gave testimony against him to the Grand Jury for the Southern District of Iowa, relating to the defendant's violations of the Lacey Act. Though we note that the inclusion of the victim's name would have made this matter beyond any dispute, we believe that objectively, this indictment sufficiently narrowed the category of behavior to the incident with Timothy Heater at the Wells Fargo Lounge.

Perhaps the best indication that the indictment contained sufficient particulars to adequately inform Smith of the nature of the charge against him is that he does not suggest that he suffered any prejudice as a result of factual deficiencies in the indictment. As the district court noted, from the day the indictment was issued through the conclusion of the trial, Smith knew that Heater was the victim referred to in the indictment. In situations where an indictment has neglected to supply a name of the other party involved in the incident, we have held that such failure, especially when no prejudice is alleged, is insufficient to require a reversal of a conviction. Collins v. Markley, 346 F.2d 230, 232 (7th Cir. 1965). Thus we conclude that the district court was correct in determining the indictment at issue to be sufficient./3

B. Exclusion of Victim's Misdemeanor Convictions

Smith's second argument on appeal is that the district court erred in barring him from introducing evidence of Timothy Heater's prior misdemeanor convictions for domestic battery and theft. Specifically, Smith asserts that the domestic battery convictions were a proper source of cross examination under Fed.R.Evid. 404(a)(2) and 405(b), and the introduction of the theft convictions was a proper method of impeachment under Fed.R.Evid. 608(b). We note at the outset

that the appellant carries a heavy burden in challenging a trial court's evidentiary rulings on appeal, as a reviewing court gives these special deference. United States v. Palmquist, 111 F.3d 1332, 1339 (7th Cir. 1997). We review rulings on the admissibility of evidence for abuse of discretion. United States v. Curry, 79 F.3d 1489, 1494 (7th Cir. 1996); see also Roy v. Austin Co., 194 F.3d 840, 843 (7th Cir. 1999). In doing so, disturbing a judgment of the district court on evidentiary grounds is necessary only if an erroneous ruling has a substantial influence over the jury. Palmquist, 111 F.3d at 1339. "[A] trial court's erroneous rulings may be deemed harmless if the record indicates that the trial court would have rendered the same judgment regardless of the error." Barber v. Ruth, 7 F.3d 636, 641 (7th Cir. 1993).

Federal Rule of Evidence 404(a) establishes the general proposition that evidence of a person's character or a trait of a character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. Subsection (a)(2) of Rule 404 is an exception to the general proposition, permitting defendants to offer evidence of their victim's character. Yet, even if character evidence is admissible under Rule 404(a)(2), the form of that evidence is limited by Rule 405. Under Rule 405(a), when character evidence regarding an individual is admissible, proof may be made in the form of opinion or reputation testimony. Under Rule 405(b), in the limited instance when the character of a person is an essential element of a charge, claim or defense, proof may also be made by specific instances of that person's conduct. Thus Rules 404(a) and its subsections, along with Rule 405, establish a two part test. First, under Rule 404 we ask whether the evidence at issue is relevant, and should thus be admitted. If relevancy favors admission of the evidence, we then turn to Rule 405, which guides trial courts in determining whether the evidence should be limited to reputation and opinion testimony, or in the rarer instance, may also include specific acts of conduct. See Palmquist, 111 F.3d at 1341; see also Hogan v. Hanks, 97 F.3d 189, 191 (7th Cir. 1996).

Turning to the first prong of the test, relevancy, the district court determined that evidence of Timothy Heater's character was relevant for the purpose of establishing whether Heater was the first aggressor. This decision on relevancy is in line with our opinion in United States v. Greschner, which held that evidence of the violent character of the victim is specifically the type of material that falls within the exception of 404(a)(2). 647 F.2d 740,

742 (7th Cir. 1981). Though Greschner stands for the proposition that the failure of the district court to admit relevant character evidence of a victim may warrant reversal, that proposition of law is inapplicable in the instant case. Here, since the district court ruled the evidence admissible, we move to the second prong of the test, and determine whether evidence of Heater's violent character can be admitted by means of specific acts of conduct, or is limited to reputation and opinion testimony.

As Rule 405(b) indicates, "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct." Thus, whether Heater's prior misdemeanor battery convictions should ultimately have been admitted, depends on whether a violent character is an essential element of a self-defense claim. The district court determined that a violent character is not an essential element of a claim for self-defense, and thus propensity evidence should be limited to reputation and opinion evidence./4 In making that determination, the court relied upon the Ninth Circuit opinion of United States v. Keiser, 57 F.3d 847 (9th Cir. 1995). In Keiser, the court noted that, even in the presence of proof of the violent character of the victim, the jury could still determine that the defendant's use of force was not justified by self-defense. Id. at 857. Of course, the opposite is true as well; "a defendant could, for example, successfully assert a claim of self-defense against an avowed pacifist, so long as the jury agrees that the defendant reasonably believed unlawful force was about to be used against him." Id.

This circuit has also addressed whether a victim's character should be considered an essential element of a self-defense claim. In Palmquist, we suggested that character evidence usually does not go to an essential element of a self-defense claim, but is rather purely supporting circumstantial evidence. 111 F.3d at 1341. The appropriateness of an act of self-defense is judged by the objective reasonableness of the act under the circumstances at the time which it was committed. Palmquist, 111 F.3d at 1341. Thus, specific acts of conduct of the victim, if unknown to the individual claiming self-defense, are necessarily circumstantial in nature. Id. It is only when the specific instances of conduct are known to the one claiming self-defense, and thus could have factored into the decisionmaking process that resulted in the act, that such instances should be admissible as essential elements of the claim.

Id.

Applying the Palmquist analysis, we agree with the district court that Heater's prior misdemeanor convictions for battery were not an essential element of Smith's self-defense claim./5 At the instant that Smith injured Heater, Smith was unaware of those convictions. That Heater may have had a violent character was admissible for helping resolve the dispute as to who attacked whom. However, character was in no way an essential element of the actual self-defense claim. The advisory committee notes acknowledge that, "[o]f the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." Fed.R.Evid. 405 advisory committee's note. Given that the convictions would be circumstantial evidence, and given the power that specific instances of conduct may have, especially when the conduct is domestic battery, we feel the district court correctly precluded the introduction of these convictions./6

In addition to the battery convictions, Smith also argues that Heater's theft convictions should have been admissible for impeachment purposes, subject to Federal Rule of Evidence 608(b)./7 However, as Smith's attorney noted at oral arguments, this ground for admission was not presented to the district court. "[A]rguments not presented to the trial court during suppression hearings are waived on appeal and may be reviewed only for plain error." United States v. Jackson, 189 F.3d 502, 508 (7th Cir. 1999). Under the plain error standard of review, courts are allowed only to correct particularly egregious errors for the purposes of preventing miscarriages of justice. United States v. Franklin, 197 F.3d 266, 270 (7th Cir. 1999).

We believe that no plain error occurred in this instance. Specifically, we fail to find any miscarriage of justice when a defendant is precluded from introducing evidence that he had, as part of a deal with the prosecution, agreed not to introduce. In this instance, both Smith and Heater had misdemeanor theft convictions. The government had come to an agreement with Smith's counsel that neither side would offer the respective convictions as impeachment evidence. As such, Smith cannot claim any prejudice in the court's decision to exclude such evidence.

We end where we began, with the highly deferential standard accorded to evidentiary decisions of the district court. In this instance

the appellant has not demonstrated sufficient error to overcome this heavy burden. As such, we find no reversible error in the district court's decisions to exclude Heater's prior convictions for misdemeanor battery and misdemeanor theft.

C.  Dismissal of Juror

Smith's final challenge to his conviction is that the district court committed reversible error when it conducted an in-chambers conference concerning the substitution of a juror without Smith being present. Since neither Smith nor his attorney objected to Smith's absence from the in-chambers conference at any time prior to this appeal, we review for plain error. Fed.R.Crim.P. 52(b); United States v. McCoy, 8 F.3d 495, 496 (7th Cir. 1993). Under that standard, we will reverse only if doing so is necessary to prevent a miscarriage of justice. United States v. Quintanilla, 2 F.3d 1469, 1476 (7th Cir. 1993).

A criminal defendant's right to be present at every stage of a criminal trial is rooted, to a large extent, in the Confrontation Clause of the Sixth Amendment, Illinois v. Allen, 397 U.S. 337, 338 (1970), and is protected to some extent by the Due Process Clause of the Fifth and Fourteenth Amendments, see Snyder v. Massachusetts, 291 U.S. 97, 105-106 (1934) (Under due process, a criminal defendant has the right to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge."). This right has also been codified in the Federal Rules of Criminal Procedure. The codified right expressed in Fed. R.Crim.P. 43(a) is broader than the constitutional right, and includes the right of the criminal defendant to be present during all stages of his or her trial. See United States v. Shukitis, 877 F.2d 1322, 1329 (7th Cir. 1989)./8

In the instant case, the court conducted an in-chambers conference immediately before commencement of the second day of trial. The district court had learned that one of the jurors was reluctant to travel to the courthouse that day due to inclement weather. The court brought counsel together to invite them to state their positions on the matter. Counsel for the defendant stated, "I talked to my client, Mr. Smith, and he likes this juror a lot, and he would like the trial to be resumed but only with that juror present. That's his wish." Despite defense counsel's request, the court ultimately substituted an alternate juror for the absent juror.

Given these facts, we believe that no

constitutional or other violation occurred with the court's decision to substitute for the absent juror. First, no Sixth Amendment right has been implicated here, as no witness or evidence against the defendant was presented during the in-chambers conference. See McCoy, 8 F.3d at 496. Second, there has been no due process violation. As it has been noted, "[t]he presence of the defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." United States v. Gagnon, 470 U.S. 522, 526, (1985) (Stevens, J., concurring). As in Gagnon, the defendant here "could have done nothing had [he] been at the conference, nor would [he] have gained anything." Id. at 527. Similarly, we have held that a defendant's due process rights are not implicated when he is excluded from an in-camera conference, when that absence did not affect the court's ability to decide the issue or otherwise diminish the defendant's ability to defend against the charges, and when the defendant's interests were adequately protected by his counsel at the conference. Shukitis, 877 F.2d at 1330. As in Gagnon, McCoy, and Shukitis, Smith's absence from the conference did not detract from his defense or in any way affect the fundamental fairness of the trial. The record shows that counsel adequately expressed Smith's viewpoint in chambers, and does not suggest that the decision would have been any different had Smith been present. As such, Smith had no due process right to attend.

Finally, we note that Smith has waived any possible right under Rule 43. "If a defendant is entitled under Rule 43 to attend certain 'stages of trial' which do not take place in open court, the defendant or his counsel must assert that right at the time; they may not claim it for the first time on appeal from the sentence entered on a jury's verdict of 'guilty.'" Gagnon, 470 U.S. at 529. Here, neither Smith nor his counsel ever requested that the defendant be present, nor objected to Smith's absence from the in-chambers conference. Furthermore, our review of the record reveals no post-trial motion bringing this to the attention of the district court. This issue is being raised on appeal for the first time and therefore has been waived. Thus, we conclude no reversible error occurred in the court's conducting the conference without Smith's presence.

III.  CONCLUSION

For the foregoing reasons, the district court's decision is

Affirmed.

/1 Smith was also charged with witness tampering. However, because he was found not guilty of that crime, the circumstances surrounding that charge are irrelevant to this appeal.

/2 The witness retaliation statute, 18 U.S.C. sec. 1513(b), provides in relevant part that:

Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for

(1)  the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or

(2)  any information relating to the commission or possible commission of a Federal offense. . . Shall be fined under this title or imprisoned not more than ten years, or both.

/3 As further support for upholding the validity of the indictment in question, we note that, under ordinary circumstances, tardily challenged indictments should be construed liberally in favor of validity. United States v. Watkins, 709 F.2d 475, 478 (7th Cir. 1983). According to Federal Rule of Criminal Procedure 12(b)(2) a defendant must raise any objection to the indictment prior to trial, and a failure to do so means the indictment must be upheld unless it is so defective that it does not, by any reasonable construction, charge any offense for which the defendant is convicted. Lemons v. O'Sullivan, 54 F.3d 357, 363 (7th Cir. 1995). Though the verdict in this case was rendered on February 23, 1999, it was not until August 3, 1999 that the defendant filed a motion challenging the sufficiency of the indictment. As our examination above indicates, this indictment cannot be considered "so defective" such that it does not charge the offense of witness retaliation. Thus, it is considered valid.

/4 The district court did in fact allow the jury to hear indirect evidence of Heater's character. Troy Hund, a long-time acquaintance of Heater's, testified as to Heater's reputation in the community for aggressiveness, and violent character.

/5 While we agree with the district court's conclusion that Heater's prior misdemeanor conviction for battery was not an essential

element of Smith's self-defense claim, we choose not to adopt the rationale of Keiser. We feel that the determination of whether a victim's character is an essential element of a self-defense claim depends on whether that character factored into the decision to act in self-defense. Though Keiser is correct that a victim's aggressive character is not ultimately dispositive on the issue of whether the victim was the first aggressor in a particular instance, self-defense analysis examines more the beliefs of the defendant rather than his or her actions.

/6 Even assuming arguendo that a victim's violent character is an essential element to a defendant's self-defense claim, we feel the result in this instance would not be different. This is not a situation where character evidence was not admitted at all. Rather, all that was excluded were specific instances of conduct. Given that the misdemeanor battery convictions would be considered cumulative, and given the deferential abuse of discretion standard, we feel reversal would not be warranted. See Palmquist, 111 F.3d at 1342; see also United States v. Waloke, 962 F.2d 824, 830 (8th Cir. 1992) (Court did not abuse its discretion in excluding evidence of witness' specific instances of violence when it permitted evidence concerning that witness' general reputation for violence after drinking.).

/7 Rule 608(b) provides in relevant part that:

Specific instances of the conduct of the witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross examined has testified.

/8 Rule 43(a) provides that:

The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and the imposition of sentence, except as otherwise provided by this rule.