[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 19, 2004
THOMAS K. KAHN
CLERK**

No. 03-10480

D. C. Docket No. 98-00028 CV-HLM-4

LOWE'S HOME CENTERS, INC.,

Plaintiff-Appellee,

versus

GENERAL ELECTRIC COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(August 19, 2004)**

Before ANDERSON and BLACK, Circuit Judges, and NANGLE[*], District Judge.

PER CURIAM:

This is an appeal of the district court's denial of General Electric Company's

---

[*]Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

("GE") post-trial motions for new trial and for judgment as a matter of law in a diversity action brought by Lowe's Home Centers, Inc. ("Lowe's") to recover damages as a result of GE's environmental contamination of Lowe's property in Rome, Georgia. More specifically, Lowe's suit sought to determine GE's liability for Lowe's inability to build a new, significantly larger Relocation Store at the same location as their original Lowe's store in Rome. Although various arguments were presented by GE in favor of the motions below, only three issues remain on appeal: 1) whether GE was entitled to a new trial because the district court's jury instruction on mitigation was inconsistent with Georgia law because it referenced Lowe's own internal policies; 2) whether GE was entitled to judgment as a matter of law with respect to the lost profit damages awarded by the jury because the completion of the Relocation Store would have required the purchase of the additional adjacent property; and 3) whether GE was entitled to judgment as a matter of law with respect to the lost profit damages awarded by the jury because the profits from a new Relocation Store are too speculative, remote, and uncertain.

## I. BACKGROUND

From 1974 to 1998, Lowe's operated a small (16,000 square foot) retail store in Rome, Georgia. Lowe's operated that store on a 5.8-acre parcel of land

2

that it purchased in 1973. The parcel was located downhill from a GE plant, which formerly manufactured and refurbished medium power transformers -- a process which until relatively recently involved the use of polychlorinated biphenyls ("PCBs").

In the early 1990s, Lowe's began to consider opening a much larger Relocation Store in Rome; however, Lowe's current 5.8-acre parcel of land was not large enough to support the proposed Relocation Store. In early 1994, Horne Properties, Inc. ("Horne"), a developer that had built Relocation Stores for Lowe's in the past, approached Lowe's about building a Relocation Store next to Lowe's existing store in Rome. Lowe's determined that the best available site for the Relocation Store was near their existing store and entered into a 20-year lease agreement with Horne. Pursuant to the lease agreement, Horne would purchase the necessary additional adjacent property as well as Lowe's current parcel, build the new facility, and then lease the combined property and structure to Lowe's pursuant to a 20-year lease. After entering into the lease agreement, Horne secured options on adjoining property immediately south of Lowe's existing 5.8 acres and had that property tested for environmental contaminants. This test revealed substantial amounts of PCBs on the adjacent property and the project was abandoned. Lowe's then sought to build the Relocation Store using all of its

3

existing parcel together with adjacent property on the north of its existing parcel. Horne then secured an option on this second piece of adjacent property, and in January 1995 Horne and Lowe's again entered into a 20-year lease agreement to build the Relocation Store. During Horne's due diligence for this second attempt at expansion, contamination in the form of PCBs from the GE facility was found both on Lowe's existing parcel as well as on the adjacent property.

Lowe's brought suit in February 1998 against GE for damages relating to the contamination of its property. Lowe's asserted: 1) federal statutory claims pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901- 6992, as well as a related claim for injunctive relief; and 2) common law tort claims for strict liability, nuisance, trespass, negligence, and negligence per se under Georgia law. On January 22, 2002, the suit proceeded to a jury trial in the district court with respect to Lowe's claims for trespass, nuisance, negligence, and negligence per se arising under Georgia law. On February 7, 2002, the jury returned a verdict in favor of Lowe's on all four claims. The jury awarded Lowe's $18 million in lost profits associated with the planned Relocation Store, $2 million in damages for reduction of the rental value of Lowe's property, and $163,581 in damages

incurred by Lowe's in investigating and responding to the contamination of its property. The jury declined to award punitive damages to Lowe's.

After the jury's verdict, Lowe's CERCLA and RCRA claims, as well as Lowe's related claim for injunctive relief, remained pending. The district court delayed entering its judgment on the jury's verdict pending a bench trial on Lowe's remaining claims.

On September 13, 2002, pursuant to an agreement between the parties, the district court entered an order vacating the portions of the jury's verdict that awarded Lowe's $2 million in damages for lost rental value and $163,581 in damages for expenses incurred by Lowe's in investigating and responding to contamination of its property. The district court order also indicated that the parties had resolved Lowe's remaining claims and directed the clerk to enter judgment for Lowe's in the amount of $18 million in lost profits.

On September 27, 2002, GE filed its motion for new trial and motion for judgment as a matter of law. The district court denied both motions, and GE timely appealed.

## II. LEGAL ANALYSIS

### A. Mitigation

GE argues that the district court's jury instruction with respect to mitigation

5

was erroneous because it engrafted a company-specific business judgment rule onto the objective inquiry of whether Lowe's acted reasonably by stating that the jury could consider Lowe's "company policies." Lowe's replies that the portion of the instruction cited by GE is taken out of context and that the instruction viewed as a whole conveyed to the jury that the inquiry was objective. The district court found that the instruction as a whole did not engraft a company-specific business judgment rule. The district court stated that it had "merely listed company policies as a factor that the jury <u>could</u> consider when determining whether [Lowe's] acted reasonably." District Court Order at 12 (emphasis in original).

A trial judge is entitled to wide discretion over the wording and style of instructions "as long as the instructions accurately reflect the law." <u>Schafer v. Time, Inc.</u>, 142 F.3d 1361, 1368 (11th Cir. 1998). We examine the jury instructions as a whole to determine if the jurors understood the issues and were not misled. <u>Id.</u> If the instructions as a whole properly express the law, "then no reversible error has occurred 'even if an isolated clause may be inaccurate, ambiguous, incomplete, or otherwise subject to criticism.'" <u>Adams v. Sewell</u>, 946 F.2d 757, 767 (11th Cir. 1991) (quoting <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991)), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>McKinney v. Pate</u>, 20 F.3d 1550 (11th Cir. 1994). Reversal is only warranted when the court is "left with a

6

substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." Shafer, 142 F.3d at 1368 (citations and quotations omitted).

We conclude that the instruction as a whole properly expressed the law. The instruction plainly and correctly stated that "[y]ou, the jury, are the sole judges of whether the plaintiff acted reasonably in avoiding or minimizing its damages," and that "[a]n injured plaintiff may not sit idly by when presented with an opportunity to reduce its damages." The mention of Lowe's policies as one of many factors does not call into doubt the overall message conveyed that it was up to the jury to determine whether Lowe's acted reasonably. Therefore, we conclude that the district court did not err in denying GE's motion for new trial with respect to this issue.

B. Lost Profits

GE presents two arguments as to why it is entitled to judgment as a matter of law with respect to the lost profit damages awarded to Lowe's. First, GE argues that because the construction of the Relocation Store required the purchase of additional adjacent property not owned by Lowe's, the "economic loss rule" barred the recovery of lost profits despite the physical damage to Lowe's existing 5.8-acre parcel. Second, GE argues that the "new business rule" barred the recovery of lost profits because the expected profits from the proposed Relocation Store are too

speculative, remote, and uncertain to permit recovery.

Having examined these arguments, we conclude that the applicability of these two distinct doctrines to the specific facts in the instant case presents unanswered questions under Georgia law that are determinative of this appeal. We therefore certify questions to the to the highest court of the State for resolution. To assist that court in resolving these questions, we briefly lay out the parties' arguments.

1. Economic Loss Doctrine

As the district court correctly pointed out below, "[u]nder Georgia law, allegations that a defendant's actions negligently damaged the property of a third party ordinarily will not entitle the plaintiff to relief." District Court Order at 35 (citing Union Camp Corp. v. Southern Bulk Indus., Inc., 193 Ga. App. 90, 92, 386 S.E.2d 866, 867-68 (1989), aff'd, 259 Ga. 828, 388 S.E.2d 524 (1990)). This limitation on tort recovery has long been a part of Georgia case law. In 1903, the Supreme Court of Georgia first applied this limitation to deny tort recovery in a suit brought by a business owner to recover economic losses caused by a power outage. Byrd v. English, 117 Ga. 191, 192, 43 S.E. 419, 419-20 (1903). The business owner sought to recover those losses from the individual whose employees caused the outage by negligently excavating on a third party's land, and

8

thereby damaging power conduits belonging to the Georgia Electric Light Company. Id. After noting that "this case is not an action for an injury to the person or property of the plaintiff," the Georgia court, in explaining the rationale for limiting recovery in the absence of a proprietary interest in the damaged property, stated:

> If the plaintiff can recover of these defendants upon this cause of action, then a customer of his, who was injured by the delay occasioned by the stopping of his work, could also recover from them, and one who had been damaged through his delay could in turn hold them liable, and so on without limit to the number of persons who might recover on account of the injury done to the property of the company owning the conduits. To state such a proposition is to demonstrate its absurdity.

Id. at 193-94, 43 S.E. at 420.

GE argues that this limitation on tort recovery is applicable in the instant case because the trial testimony established that Lowe's could not have built the Relocation Store on its existing 5.8-acre parcel, and that therefore, the basis for its lost profit claim was the frustration of its attempt to build a Relocation Store on a composite property tract that included the additional adjacent property in which Lowe's never possessed a protected property interest.[1]

_____

[1] GE argues that in substance Lowe's is seeking damages for negligent interference with its contract rights; GE argues that such a cause of action is not recognized in Georgia. Lowe's rejects GE's characterization of its cause of action, insisting that GE's injuries to Lowe's property itself proximately caused Lowe's damages.

Lowe's argues that having suffered injury to its own property, it was entitled to recover all its damages proximately caused by GE's injuries to its property, including lost profits. Crucial to Lowe's argument is the fact that its existing 5.8-acre tract was necessary for the construction of the Relocation Store. Therefore, Lowe's argues that the injury to its property alone was a sufficient proximate cause to prevent Lowe's from constructing the Relocation Store regardless of whether the additional adjacent property had also been contaminated.[2]

Because no Georgia case law resolves this issue of whether Lowe's can recover lost profits, we respectfully certify the following question of law to the Supreme Court of Georgia:

> Can Lowe's recover lost profits when its own property was damaged, but additional property, also damaged but not belonging to Lowe's was necessary to complete the Relocation Store upon which the lost profit award was premised?

### 2. New Business Rule

As a general rule, lost profits of a commercial venture "'are not recoverable

---

[2]     Although Lowe's has argued that the injury to its own property was a sufficient proximate cause of its lost profits, we note that jury interrogatory 11 asked: "Do you find that Lowe's has lost profits and that those lost profits were proximately caused by the spread of chemicals on Lowe's and adjoining property after May 2, 1973." However, in denying GE's motion for new trial the district court rejected GE's challenge to this interrogatory because the remaining interrogatories consistently spoke of contamination to Lowe's property, and GE does not challenge this ruling or this interrogatory on appeal, and does not seek a new trial on this ground. Thus, GE has abandoned its challenge to interrogatory 11.

as they are too speculative, remote, and uncertain.'" <u>Molly Pitcher Canning Co. v.</u> <u>Cent. of Ga. Ry. Co.</u>, 149 Ga. App. 5, 10, 253 S.E.2d 392, 396 (1979) (quoting <u>Ga.</u> <u>Grain Growers Ass'n Inc. v. Craven</u>, 95 Ga. App. 741, 747, 98 S.E.2d 633 (1957)). However, there is an exception to the above rule when lost profits are capable of "reasonably accurate computation," such as when the damages belong to "an established business with clearly defined business experience as to profit and loss." <u>Id.</u> at 397. Lost profits are generally unavailable to new businesses which lack such a track record. <u>See</u> <u>id.</u>

In the instant case, the district court denied GE's motion for judgment as a matter of law with respect to lost profits despite the fact that the lost profit award was premised upon the planned Relocation Store, which was never constructed on the site and was several times larger than Lowe's existing store. The district court's decision was premised 1) upon its conclusion that there was sufficient evidence presented that the jury could have determined that the Relocation Store would not be a new business in fact because, *inter alia*, it would be still selling the same general products, and 2) its conclusion that the new business rule has little application to new locations opened by chain stores or national franchises.

With respect to its latter finding, the district court acknowledged that neither the Supreme Court of Georgia nor the Georgia Court of Appeals had previously

determined whether the new business rule applied when the new business was part of a chain of stores or a nationwide franchise; however, the district court believed that the Georgia courts would allow recovery of lost profits with respect to these businesses, thereby adopting the approach used in Washington and Kentucky as illustrated in No Ka Oi Corp. v. National 60 Minute Tune, Inc., 863 P.2d 79, 83-84 (Wash. App. 1993), and Pauline's Chicken Villa, Inc. v. KFC Corp., 701 S.W.2d 399, 401-02 (Ky. 1985).

Lowe's has more reliable evidence to support the computation of lost profits than a typical new business; Lowe's experts analyzed the performance of the existing Rome store as well as extensive data regarding the performance of numerous other Relocation Stores opened in existing markets.  Nevertheless, because no Georgia case law resolves this issue of whether Lowe's can recover lost profits based upon a new Relocation Store, we respectfully certify the following question of law to the Supreme Court of Georgia:

> Are Lowe's losses due to the failure to open the Relocation Store capable of reasonably accurate computation such that lost profit damages would be recoverable?

Our statement of the questions to be certified with respect to the lost profit damages is not meant to limit the scope of inquiry by the Supreme Court of Georgia.  "This latitude extends to the Supreme Court's restatement of the issue or

12

issues." Washburn v. Rabun, 755 F.2d 1404, 1406 (11th Cir. 1985). Similarly, an answer to one of the questions may render unnecessary resolution of the other one.

In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.

QUESTIONS CERTIFIED pursuant to O.C.G.A. § 15-2-9

III. CONCLUSION

We AFFIRM the district court's denial of GE's motion for new trial premised upon the mitigation instruction. With respect to the lost profits issue, we CERTIFY two state law questions. We WITHHOLD any decision on the district court's denial of the motion for judgment as a matter of law until we receive from the Supreme Court of Georgia its response to this certification.